# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| ProPac, Inc., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>$5,219,224.20 U.S. Dollars Deposited )<br>to the Account of Medical Biowaste )<br>Solutions, Inc., *in rem*, Medical Biowaste )<br>Solutions, Inc., and Atlantic Group USA, )<br>Inc., *in personam*, )<br>)<br>Defendants. )<br>_____ ) | C.A. No. 2:20-3792-RMG<br><br><br><br><br>**ORDER AND OPINION** |

This matter comes before the Court on a motion for a preliminary injunction by Plaintiff ProPac, Inc. ("ProPac") under Rule 65 of the Federal Rules of Civil Procedure. (Dkt. No. 4). For the reasons set forth below, the motion is granted.

## Factual Background

This action arises out of efforts by ProPac to acquire over 1 million boxes of surgical gloves to meet the urgent demand of its customers for PPE. ProPac approached Defendant Atlantic Group USA, Inc. ("Atlantic"), a company active in the medical supply business, to seek its assistance in locating such a large supply of gloves. Atlantic, in turn, reached out to Medical Biowaste Solutions, Inc. ("MBS") in late May 2020, dealing with Randall Roth ("Roth").[1] Roth informed

---

[1] Roth's status with MBS has been something of a moving target. At a November 4, 2020 hearing, counsel for MBS identified Roth as the CEO of MBS. (Dkt. No. 18 at 20). Roth then filed a declaration with the Court stating that "[a]t all relevant times related to this action, I was employed by Defendant Medical Biowaste Solutions, Inc. (MBS) in the position of VP of Sales." (Dkt. No. 25 at 1). At a hearing on November 12, 2020, Roth testified that in late June 2020 he left his position with MBS and became CEO of another entity, with overlapping majority ownership, MBS

1

Atlantic that MBS had access to the product and could fill Atlantic's order. (Dkt. No. 33-1 at 1-2). According to the declaration of Brett Block, CEO of Atlantic, Roth represented to him that MBS "had access to product and product production of PPE and could supply it to Atlantic Group's customer, ProPac." (*Id.*). Block stated in his declaration that he advised Roth that ProPac was its "end-buyer" and that MBS assisted in the design of packaging for the gloves that was labeled in the name of ProPac and included its address in North Charleston, South Carolina. (*Id.* at 2). A copy of the package design was provided to the Court, which plainly carries ProPac's logo and address in South Carolina. (*Id.* at 9-10).

On June 9, 2020, MBS contracted with Atlantic to deliver one million boxes of surgical gloves for the price of $8,032,800. (Dkt. Nos. 23-2, 23-5). ProPac was not a signatory to this contract. MBS reported to Atlantic that it had contracted with a Hong Kong based company, Gold Mark Development Ltd. ("Gold Mark"), to ship 322,000 boxes of gloves by June 27, 2020 and 678,000 boxes by July 5, 2020. (Dkt No. 15-2); (Dkt. No. 23-8). Gold Mark represented it had arranged with a Vietnam based company, VRG Khai Hoan, to produce the gloves. (Dkt. No. 23-8 at 1).

Relying on MBS' representations, ProPac transferred to Atlantic $5,219,224.20. Complaint, (Dkt. No. 1 ¶ 11). Thereafter, over a period of several weeks, Atlantic wired to MBS

---

Medical Technologies, Inc. (Dkt. No. 40 at 17, 19-20). Around this time, Roth changed his email address to randall@mbsmedtech.com. (Dkt No. 33-1 at 7, 13). Roth acknowledges, however, that he nevertheless continued to act on behalf of MBS regarding the transaction at the center of this litigation, communicating by phone and email with senior employees of Atlantic and ProPac. (Dkt. No. 40 at 20, 25-26, 58-59). Further, Atlantic's general counsel testified that he dealt with Roth regarding this matter in September 2020. (*Id*. at 64). MBS has plainly blurred the lines between itself and the similarly named MBS Medical Technologies, Inc. When Roth suggested that Atlantic begin dealing with MBS' counsel John Marshall on this matter, Atlantic was given the email address of John.marshall@mbsmedtech.com. (Dkt. No. 33-1 at 44).

2

a total $4,150,908 from the ProPac funds it was holding. (Dkt No. 23-12 at 1-2). MBS wired $1,899,000 to Gold Mark at DBS Bank (Hong Kong) Ltd. (*Id.* at 4).

When the promised shipping dates came and went with no delivery of the surgical gloves, MBS was made aware of ProPac's great concern over the missing gloves. On June 30, 2020, Roth wrote Brett Block, CEO of Atlantic, and Skip Stevenson, vice president of ProPac, that "we have hand off of gloves tomorrow." He demanded full payment "at the time of shipment" and sought "a very heavy fee to airfreight the entire order." (Dkt. No. 33-1 at 13). Roth sought confirmation that "Atlantic Group and Propac are accepting responsibility for payment of the air freight." (*Id.*). On July 6, 2020, Roth wrote a series of emails to Block and Stephenson demanding additional payment of $300,000 for freight and the balance due of $3,439,092. (*Id.* at 19, 24). When Atlantic and ProPac did not promptly respond, Roth sent further emails that day to Block and Stephenson threatening to put the gloves on a ship for delivery, rather than air freight, when he knew ProPac had an urgent need for immediate delivery. (*Id.* at 18). Roth further acknowledged he had at least one telephone conference regarding the gloves that included Skip Stevenson of ProPac and Brett Block of Atlantic. (Dkt Nos. 33-1 at 3; Dkt. No. 40 at 59). No gloves have ever been delivered by MBS and there has been no return of the over $4 million of ProPac's money paid by Atlantic to MBS.

After the gloves did not arrive, Roth told Atlantic that if the company canceled its order, its money would be refunded within two weeks. (Dkt. No. 33-1 at 36-37). After Atlantic canceled its order, no refund came. Subsequently, MBS asserted that its failure to deliver the promised gloves or return the funds it sent to Gold Mark was the result of a Vietnamese government enforcement action, for alleged corruption, against the manufacturer. The Court entered an order directing MBS to produce any evidence of this alleged Vietnamese government enforcement

action. (Dkt. No. 19 at 2).  No documents were produced.  Roth testified at the November 12, 2020 hearing that he had given documents to MBS' counsel regarding this alleged Vietnamese government enforcement action. (Dkt. No. 40 at 47, 54).  No explanation has been provided by MBS as to why such documents, if they exist, have not been produced.

On October 28, 2020, Plaintiff filed its complaint, alleging MBS is engaged in an ongoing fraudulent scheme characterized by a pattern of "false promises," "deceptive statements," and the delivery of "no gloves." (Dkt. No. 1 ¶¶ 18-21).  ProPac alleges that MBS converted its funds and diverted them to MBS-related entities.  (*Id.* ¶¶ 21, 25-26, 46-51).  ProPac alleges this scheme was undertaken with MBS knowing "that it would not or could not provide the gloves to ProPac." (*Id.* ¶ 25).  ProPac's causes of action include, *inter alia*, claims for conversion and breach of fiduciary duty, and ProPac seeks an accounting and constructive trust over the allegedly converted funds.

On October 28, 2020, ProPac also filed a motion for a temporary restraining order and preliminary injunction. (Dkt. No. 4).  ProPac seeks a "temporary Restraining Order and Preliminary Injunction restraining and enjoining Defendants [MBS and Atlantic], and any transferees of MBS and/or Atlantic Group, of and from the disbursement or further disbursement or other disposition of that certain $5,219,224.20 conveyed to Atlantic Group by ProPac and, in turn, conveyed to MBS by Atlantic Group, in exchange for the provision of goods and services that were never delivered to ProPac, the true ownership of said monies being claimed by ProPac." (*Id.* at 1).  On November 4 and 12, 2020, the Court held hearings on ProPac's motion.  At the November 12, 2020 hearing, after the Court indicated to MBS that it denied MBS' motion to dismiss for lack of personal jurisdiction—with a written order to follow—counsel for MBS consented to ProPac's request for a preliminary injunction. (Dkt. No. 40 at 9-10).  ProPac accepted

4

MBS' stipulation. (*Id.* at 75). Atlantic supports ProPac's motion. (Dkt. No. 30). ProPac's motion is fully briefed and ripe for disposition.

## Legal Standard

Preliminary injunctions are "extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). Usually, preliminary injunctions "aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013). In seeking such an injunction, "[a] plaintiff [ ] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## Discussion

### A. Satisfaction of the *Winter* Factors

The Court finds that ProPac has sufficiently demonstrated each of the four *Winter* factors to warrant issuance of the preliminary injunction under Rule 65(a).

First, considering the extensive factual record before the Court, described *supra*, ProPac is likely to succeed on the merits of its claims. The Court also finds that ProPac has demonstrated that it faces irreparable harm absent issuance of injunctive relief. Here, though ProPac transferred over $ 5 million to Atlantic, and Atlantic over $ 4 million to MBS, ProPac has not received a single glove to date nor has MBS responded to Atlantic's requests for reimbursement or for an accounting. Therefore, this factor weights in ProPac's favor. Third, the equities weigh in favor of imposing injunctive relief in these circumstances, especially in light of MBS' consent to ProPac's requested relief. Lastly, ProPac has demonstrated that issuance of a preliminary injunction is in

the public interest. *See* (Dkt. No. 4 at 8) (arguing "the public will benefit from the exercise of proper control over monies paid over to others in good faith, in the apparent conduct of business, when, as in this instance, a party or parties simply fail to perform and likewise fail to return monies paid in good faith despite the failure to perform obligations under an agreement").

### B. Imposition of a Security Requirement, Pursuant to Rule 65(c)

Rule 65(c) mandates that the Court "may issue a preliminary injunction . . .only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). ProPac requests that the Court set the bond amount as it sees fit or waive the security requirement altogether. (Dkt. No. 4 at 8-9). Imposition of the Rule 65(c) security requirement "is mandatory and unambiguous" and the district court "is not free to disregard the bond requirement altogether." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999). Nonetheless, the court retains "discretion to set the bond amount in such sum as the court deems proper." *Id.* Moreover, the Court has "discretion to set a bond amount of zero where the ... restrained party faces no likelihood of material harm." *Md. Dept. of Human Res. v. U.S. Dept. of Agric*, 976 F.2d 1462, 1483 n.23 (4th Cir. 1992); *see also Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) (approving district court's fixing bond amount at zero in the absence of evidence regarding likelihood of harm).

Here, ProPac allege that MBS has wrongfully converted its funds and the record before the Court shows that neither MBS nor Atlantic have delivered a single glove to ProPac. Thus, considering MBS' consent to the instant motion, (Dkt. No. 40 at 75), and considering the factual findings made *supra*, the Court finds MBS bears no risk of sustaining "costs or damages" associated with preserving the status quo of the funds. *See Hoechst Diafoil Co.*, 174 F.3d at n.3

("In fixing the amount of an injunctive bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order.").

The Court sets ProPac's Rule 65(c) bond in the amount of $ 0.00.

### C. Contents and Scope of the Preliminary Injunction, Pursuant to Rule 65(d)

Rule 65(d) mandates the contents and scope of every injunction or restraining order. Accordingly, the Court makes the following specific findings and orders:

The reason for issuance of this preliminary injunction is, the Court having found that ProPac satisfied the *Winter* standard, to maintain the status quo of fungible assets, specifically $5,219,224 conveyed to Atlantic Group by ProPac and, in turn, conveyed to MBS by Atlantic Group, in exchange for the provision of goods and services that were never delivered to ProPac.

The specific terms of this preliminary injunction are as follows: Defendants Atlantic Group USA, Inc. and Medical Biowaste Solutions, Inc. are **HEREBY RESTRAINED** until further order from this Court from (1) effectuating any transfers, disbursements, or other disposition of the $5,219,224 transferred to Atlantic by ProPac and, in turned, conveyed to MBS by Atlantic; (2) destroying documentary or other information in their possession and control that may be reasonably required to create an accounting of said funds.

The persons bound by this preliminary injunction are Atlantic and MBS, including their respective employees, officers, representatives and agents, as well as any other person exercising control over the $5,219,224 in question or any other person in active concert or participation with Atlantic or MBS or their employees, officers, representative and agents. Fed. R. Civ. P. 65(d)(2).

## Conclusion

Based on the foregoing, the Court **GRANTS** ProPac's motion for a preliminary injunction. (Dkt. No. 4).

**AND IT IS SO ORDERED.**

 s/Richard Mark Gergel
Richard Mark Gergel
United States District Judge

November 16, 2020
Charleston, South Carolina